## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **STEVEN SCHULTE,** | § | |
|     *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:20-cv-240** |
| | § | |
| **EUGENE HILLHOUSE, individually** | § | |
| **and in his official capacity,** | § | |
| **STEVEN LETLOW, individually,** | § | |
| **DERRICK HOCUTT, individually,** | § | |
| **MICHAEL FERGUSON, individually,** | § | |
| **KAREN TOWNSON, individually,** | § | |
|     *Defendants.* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

## Table of Contents

I. PARTIES ................................................................................................................. 5

II. JURISDICTION AND VENUE ................................................................................ 6

III. FACTS AND ALLEGATIONS ............................................................................... 6

IV. CAUSES OF ACTION .......................................................................................... 15

V. PUNITIVE DAMAGES ......................................................................................... 31

VI. DAMAGES ........................................................................................................... 32

VIL. ATTORNEY'S FEES .......................................................................................... 33

VIIL. JURY REQUEST ............................................................................................... 33

PRAYER ..................................................................................................................... 33

# Table of Authorities

*Alderson v. Concordia Par. Corr. Facility,*
  848 F.3d 415, 422 n.8. (5th Cir. 2017). ............................................................................. 18

*Domino v. Tex. Dep't of Criminal Justice,*
  239 F.3d 752, 755 (5th Cir. 2001) ................................................................................... 17

*Dyer v. Houston,*
  955 F.3d 501, 506 (5th Cir. 2020) ................................................................................... 17

*Easter v. Powell,*
  467 F.3d 459, 461–65 (5th Cir. 2006) ............................................................................ 18

*Estelle v. Gamble,*
  429 U.S. 97, 103 (1976) ................................................................................................... 17

*Farmer v. Brennan,*
  511 U.S. 825, 837 (1994) .................................................................................................. 17

*Galvan v. Calhoun Cty.,*
  719 F. App'x 372 (5th Cir. 2018) .................................................................................... 18

*Hampton Co. Nat'l Sur., LLC v. Tunica Cty.,*
  543 F.3d 221, 224 (5th Cir. 2008) .................................................................................. 22

*Harris v. Hegmann,*
  198 F.3d 153, 159–60 (5th Cir. 1999) ............................................................................ 18

*Kingsley v. Hendrickson,*
  135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) .......................................................... 15

*Monell v. Dep't of Social Servs.,*
  436 U.S. 658, 690–91 (1978) .......................................................................................... 23

*Pembaur v. City of Cincinnati,*
  475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ............................................ 23

*Piotrowski v. City of Houston,*
  237 F.3d 567, 578 (5th Cir. 2001) ................................................................................... 23

*Rodriguez v. Bexar County,*
  2018 WL 4431433 ............................................................................................................ 18

*Thompson v. Upshur Cty., Tex.,*
  245 F.3d 447, 457 (5th Cir. 2001) ................................................................................... 17

*Zarnow v. City of Wichita Falls, Tex.*,
  614 F.3d 161, 166 (5th Cir. 2010) .................................................................................. 22

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, STEVEN SCHULTE, Plaintiff, complaining of EUGENE HILLHOUSE, individually and in his official capacity, STEVEN LETLOW, individually, DERRICK HOCUTT, individually, MICHAEL FERGUSON, individually, KAREN TOWNSON, individually, and for causes of action will respectfully show unto the Court as follows:

**I.**
**<u>PARTIES</u>**

1.      Plaintiff Steven Schulte is a resident of Henderson County, Texas.

2.      Defendant Eugene "Botie" Hillhouse, the Sheriff of Henderson County and chief policymaker for the Henderson County Jail, is an individual residing in Henderson County, Texas, and may be served at his place of employment at the Henderson County Sheriff's Office located at 206-A North Murchison Street, Athens, Texas 75751 or wherever he may be found. Defendant Hillhouse is being sued in both his individual capacity and his official capacity as Sheriff and policymaker for the Henderson County Jail.

3.      Defendant Steven Letlow is an individual residing in Henderson County, Texas and is a Jailer with the Henderson County Sheriff's Office and may be served at his place of employment at the Henderson County Jail located at 206 N. Murchison Street, Athens, Texas 75751 or wherever he may be found. Defendant Letlow is being sued in his individual capacity.

4.      Defendant Derrick Hocutt is an individual residing in Henderson County, Texas and is a Jailer with the Henderson County Sheriff's Office and may be served at his place of employment at the Henderson County Jail located at 206 N. Murchison Street,

Athens, Texas 75751 or wherever he may be found. Defendant Hocutt is being sued in his individual capacity.

5.      Defendant Michael Ferguson is an individual residing in Henderson County, Texas and is a Jailer with the Henderson County Sheriff's Office and may be served at his place of employment at the Henderson County Jail located at 206 N. Murchison Street, Athens, Texas 75751 or wherever he may be found. Defendant Ferguson is being sued in his individual capacity.

6.      Defendant Karen Townson is an individual residing in Henderson County, Texas and is a Jailer with the Henderson County Sheriff's Office and may be served at her place of employment at the Henderson County Jail located at 206 N. Murchison Street, Athens, Texas 75751 or wherever she may be found. Defendant Townson is being sued in her individual capacity.

## II.
## JURISDICTION AND VENUE

7.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.  Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391 because one of the Defendants are domiciled and/or reside in the Eastern District of Texas, and all or a substantial part of the cause of action accrued in the Eastern District.

## III.
## FACTS AND ALLEGATIONS

8.      On December 15, 2019, Plaintiff Steven Schulte was booked into the Henderson County Jail in Athens, Texas.

9.      At all times during his confinement in the Henderson County Jail that make the basis of this lawsuit, Mr. Schulte was classified as a pre-trial detainee.

10.     On March 18, 2019, Mr. Schulte was being held in a cell in Pod B1.

11.     On each jail cell door, there is a slot in which clothing, food, mail, and other items are passed through.

12.     This slot has a metal door that can be closed and locked.

13.     While being housed in the Henderson County Jail, inmates take place in a weekly laundry clothes changeout.

14.     "Each inmate is required to exchange jail issued clothing on laundry days," according to the Henderson County laundry policies.

15.     During the laundry process on March 18, 2019, Defendant Steven Letlow, a Henderson County Jailer, was outside of Mr. Schulte's cell in Pod B1.

16.     Through the jail door slot, Mr. Schulte was asking Defendant Letlow for a shirt because he did not receive a new one during the laundry exchange.

17.     Mr. Schulte's arms were positioned so that they were through the cell door slot resting on the base of the cell door slot, with his palms facing down.

18.     As Mr. Schulte was asking for a new shirt, Defendant Letlow slammed the door of the slot onto Mr. Schulte's hands and wrists.

19.     Defendant Letlow slammed the metal door with extreme force using his entire body weight.

20.     Defendant Letlow slammed the slot door on Mr. Schulte's hands and wrists multiple times.

21.     After Defendant Letlow finished slamming the slot door on Mr. Schulte's hands and wrists, Mr. Schulte pulled his hands back quickly.

22.     Mr. Schulte immediately grabbed his left hand and wrist because he was in a great deal of pain.

23.     Defendant Letlow had not valid reason for slamming the metal slot door on Mr. Schulte's hands and wrists.

24.     Immediately prior to Defendant Letlow slamming the metal slot door on Mr. Schulte's hands and wrists, Mr. Schulte had not threatened anyone, including Defendant Letlow.

25.     Immediately prior to Defendant Letlow slamming the metal slot door on Mr. Schulte's hands and wrists, Mr. Schulte was not a danger to anyone, including Defendant Letlow.

26.     Immediately prior to Defendant Letlow slamming the metal slot door on Mr. Schulte's hands and wrists, Mr. Schulte was not disobeying commands.

27.     Immediately prior to Defendant Letlow slamming the metal slot door on Mr. Schulte's hands and wrists, Mr. Schulte was not violating any rules.

28.     Immediately prior to Defendant Letlow slamming the metal slot door on Mr. Schulte's hands and wrists, Mr. Schulte was not violating any laws.

29.     Mr. Schulte did nothing to warrant Defendant Letlow slamming the metal slot door on his hands and wrists.

30.     When Defendant Letlow realized that Mr. Schulte was seriously injured, he called for backup jailers to assist him.

31.     Multiple jailers, including Timothy Tanner, Robert Ling, and Defendant Derrick Hocutt, accompanied Defendant Letlow into Mr. Schulte's cell.

32.     Defendant Hocutt was recording the entry into Mr. Schulte's cell on a video camera.

33.     The other jailers asked Mr. Schulte what had just occurred between him and Defendant Letlow.

34.    Mr. Schulte explained to the jailers that he did not get a shirt during the laundry exchange and that he did not want to get in trouble for not having a shirt, so he had asked Defendant Letlow for a new one. Then, Defendant Letlow slammed his hands and wrists in the cell door slot while he was asking for a shirt.

35.    The jailers counted Mr. Schulte's clothing he had received and confirmed that Mr. Schulte had not received a shirt.

36.    After confirming what Mr. Schulte told them, they took him to the medical unit.

37.    Mr. Schulte was in excruciating pain in his left shoulder, arm, and wrist.

38.    While waiting to seek treatment, Mr. Schulte asked Defendant Hocutt for photographs to be taken of his hand.

39.    Defendant Hocutt asked Mr. Schulte why he would need photos and Mr. Schulte responded that he wanted to press charges against Defendant Letlow.

40.    Defendant Hocutt took three photographs - one of the side of Mr. Schulte's hand, one of the top of Mr. Schulte's hand, and one of the bottom of Mr. Schulte's hand.

41.    While Mr. Schulte was in the medical unit, Defendant Sheriff Eugene "Botie" Hillhouse met with Mr. Schulte.

42.    Defendant Hillhouse is the Henderson County Jail's chief policymaker and has been delegated policy-making authority by the Henderson County Commissioners Court.

43.    When Defendant Hillhouse walked into the medical unit, he was laughing and asked Mr. Schulte why his officer would do that to him.

44.    Defendant Hillhouse was referring to Defendant Letlow slamming the slot door onto Mr. Schulte's hands and wrists.

45.     Mr. Schulte then explained to Defendant Hillhouse how he was trying to get a shirt because he did not get one during the laundry exchange. As he was asking for a shirt, Defendant Letlow slammed his hands and wrist in the cell slot with the slot door.

46.     After Mr. Schulte explained to Defendant Hillhouse what happened, Defendant Letlow went to the medical unit to meet with Mr. Schulte.

47.     Defendant Hocutt was recording the conversation between Defendant Letlow and Mr. Schulte on a video camera while Defendant Hillhouse was present.

48.     During that conversation, Defendant Letlow apologized to Mr. Schulte and said that he thought Mr. Schulte was going to do what other inmates would have done.

49.     Mr. Schulte asked what Defendant Letlow meant by that statement.

50.     Defendant Letlow admitted that he thought Mr. Schulte was someone else.

51.     Defendant Letlow added that Mr. Schulte did nothing wrong.

52.     While in the medical unit, x-rays were taken of Mr. Schulte's hands and wrists.

53.     The x-rays showed that Mr. Schulte had two fractured bones.

54.     Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were present in the medical unit when the x-rays were discussed which showed Mr. Schulte had fractures in his hands and wrists.

55.     Thus, Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were aware that Mr. Schulte sustained fractures when Defendant Letlow slammed the slot door onto his hands and wrists.

56.     The jail medical staff told Mr. Schulte that he would have to deal with his hand when he was released from jail.

57.    Mr. Schulte requested to go to the emergency room, but his request was denied.

58.    Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were present in the medical unit when Mr. Schulte's request to go to the emergency room was denied.

59.    Thus, Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were aware that Mr. Schulte was not receiving medical care for his obvious serious injury.

60.    Defendant Hillhouse, as Sheriff and policymaker for Henderson County, ratified and actively participated in the denial of medical care to Mr. Schulte, creating municipal policy.

61.    Defendant Hillhouse did not want Mr. Schulte to be taken to the hospital because Defendant Hillhouse was attempting to cover up the excessive force used by Defendant Letlow.

62.    Instead of providing him with actual medical care – due to the fact that his x-rays showed he had a fracture and the cause of the fracture was known to be Defendant Letlow - Nurse Sheryl placed two popsicles sticks and an ace wrap around Mr. Schulte's wrist.

63.    This was clearly inadequate medical care for a fractured bone.

64.    Mr. Schulte was in extreme pain and requested medication to ease his pain.

65.    The jail staff only offered Mr. Schulte Tylenol.

66.    Nurse Susie, told Mr. Schulte that they only give Tylenol in the Henderson County jail.

67.    Mr. Schulte again asked if he could go to the emergency room; however, again, his request was denied.

68.    Mr. Schulte could have been taken to the hospital where he would have been given adequate care and adequate medication; however, he was denied both.

69.    Henderson County even charged Mr. Schulte for the Tylenol from his commissary account – even though Defendant Letlow was the cause of Mr. Schulte's unnecessary pain.

70.    Mr. Schulte filed multiple grievances regarding this incident and directed them to Defendant Hillhouse.

71.    On March 20, 2019, Mr. Schulte filed an inmate request stating, "why haven't y'all sent an officer to me to press charges…I've sent a grievance every day since" and "I'm pressing charges on my broken wrist that [sic] officer broke."

72.    Mr. Schulte received a response on March 21, 2019 that stated, "DA's office has been notified."

73.    These grievances directed to Defendant Hillhouse demonstrate further knowledge and ratification by Defendant Hillhouse of the denial of medical care to Mr. Schulte.

74.    As the policymaker for Henderson County, this action of ratifying and actively participating in the denial of medical care to Mr. Schulte created a municipal policy.

75.    Mr. Schulte repeatedly asked the Henderson County jail staff for medical care and was denied each time.

76.    Mr. Schulte's pain level was at a constant level nine on a scale of one to ten.

77.    While in his medical cell, Mr. Schulte continuously pressed the help call button, but no jail staff ever responded.

78.    On one occasion, Mr. Schulte asked Defendant Karen Townson to ice and re-wrap his hand.

79.    Defendant Townson told Mr. Schulte that his hand was not fractured in more than three spots and walked away without providing Mr. Schulte any medical attention.

80.    Defendant Townson visually saw the swelling of Mr. Schulte's hand and knew that he had a fracture but did nothing to help him.

81.    In another instance, Mr. Schulte came into contact with Defendant Michael Ferguson.

82.    Mr. Schulte showed Defendant Ferguson his hand, explained it was fractured, and explained that he was in an extreme amount of pain.

83.    Mr. Schulte asked Defendant Ferguson for medical attention.

84.    Defendant Ferguson looked at Mr. Schulte's hand and then smiled and walked away without rendering medical attention.

85.    On another occasion, Mr. Schulte asked Defendant Hocutt for medical attention.

86.    Mr. Schulte told Defendant Hocutt how much pain he was in and Defendant Hocutt was aware that Mr. Schulte had fractures as a result of Defendant Letlow slamming his hands and wrists in the slot door, but Defendant Hocutt still refused to give him medical attention.

87.    Instead of providing Mr. Schulte with medical attention, Defendant Hocutt called Mr. Schulte a "pussy" in an apparent effort to degrade him while simultaneously acknowledging his pain.

88.    Defendant Townson was present when this occurred.

89.    Instead of providing Mr. Schulte with medical attention, Defendant Townson just laughed at what Defendant Hocutt called Mr. Schulte.

90.    Mr. Schulte was released on a personal recognizance bond on March 21, 2019.

91.    Mr. Schulte had been in custody for ninety-six days.

92.    Mr. Schulte was released on a personal recognizance bond only three days after Defendant Letlow broke his wrist.

93.    During that three days, Mr. Schulte was in extreme agony as his wrist was fractured and he did not receive any medical attention.

94.    While he was being released on March 21, 2019, Mr. Schulte saw Defendant Townson outside of the jail smoking a cigarette. Defendant Townson asked Mr. Schulte why he was not taken to the hospital when his hand was injured.

95.    Mr. Schulte did not know what to say since when he asked to go to the Emergency Room his request was denied.

96.    This shows that Defendant Townson knew Mr. Schulte needed to go to hospital each time she denied him medical care in the jail.

97.    Directly after Mr. Schulte was released from the Henderson County Jail, he went on his own to the emergency room at UT Health East Texas Medical Center.

98.    Dr. David P. Gillett ordered x-rays on Mr. Schulte's left wrist because he observed swelling.

99.    The results reported by Dr. Gillett and reviewed by Dr. Harold Smitson showed a nondisplaced fracture of the midshaft body of the navicular bone in the wrist.

100.    The Defendants were at all times acting under color of law.

**IV.**
**CAUSES OF ACTION**

**Count One**

**EXCESSIVE FORCE**
**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983**
**Defendant Letlow**

101.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

102.    "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015).

103.    A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *Kingsley*, 135 S. Ct. at 2473.

104.    Acting under the color of law, Defendant Letlow deprived Mr. Schulte of the rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

105.    Mr. Schulte brings this cause of action pursuant to 42 U.S.C. § 1983.

106.    The amount of force used by Defendant Letlow against Mr. Schulte as described above, specifically but not limited to, when Defendant Letlow slammed the metal cell slot door onto Mr. Schulte's hands and wrists, was objectively unreasonable under the circumstances and inflicted unnecessary physical injury, pain, and suffering upon Plaintiff.

107.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

108.    Mr. Schulte was confined to his locked cell and was unable to leave the cell when Defendant Letlow slammed the metal cell slot door onto Mr. Schulte's hands and wrists.

109.    Mr. Schulte was not threatening any officer or other person immediately prior to and at the time when Defendant Letlow slammed the metal cell slot door onto Mr. Schulte's hands and wrists.

110.    Mr. Schulte was not attempting to escape immediately prior to and at the time when Defendant Letlow slammed the metal cell slot door onto Mr. Schulte's hands and wrists.

111.    Mr. Schulte was not a danger to any officer or inmate prior to and at the time when Defendant Letlow slammed the metal cell slot door onto Mr. Schulte's hands and wrists.

112.    A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with pre-trial detainees such as Mr. Schulte, who was not threatening any officer or other person, was not attempting to escape at the time the force was used, and who the use of force was not warranted.

113.    A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with pre-trial detainees such as Mr. Schulte, who was not threatening any officer or other person, was not attempting to escape at the time the force was used, and who the use of force was not warranted.

114.    A reasonable officer in Defendant Letlow's shoes would know that Defendant Letlow slamming the metal cell slot door onto Mr. Schulte's hands and wrists was clearly unreasonable and excessive.

115.    Slamming the metal cell slot door onto Mr. Schulte's hands and wrists served no legitimate governmental purpose.

116.    As a direct result of the force used against him by Defendant Letlow, Mr. Schulte suffered physical injury, pain, and mental anguish for which he sues herein.

117.    These injuries were not caused by any other means.

118.    Defendant Letlow was at all times acting under the color of law.

**Count Two**

**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983**
**Defendants Hillhouse (Individually), Hocutt, Ferguson, and Townson**

119.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

120.    The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 955 F.3d 501, 506 (5th Cir. 2020) (citing *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976))).

121.    To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. *Dyer*, 955 F.3d at 506 (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).

122.    Mr. Schulte had a constitutional right to medical care while incarcerated as a pretrial detainee under the Fourteenth Amendment.

123.    Refusing to treat a prisoner's complaints can give rise to Section 1983 liability. *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018); *Easter v. Powell*, 467 F.3d 459, 461–65 (5th Cir. 2006); *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 n.8. (5th Cir. 2017).

124.    An episodic-acts-or-omissions claim faults specific jail officials for their acts or omissions.

125.    As to the individual in an episodic-acts-or-omissions claim, the relevant question becomes "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Rodriguez v. Bexar County*, 2018 WL 4431433.

### Defendants Hillhouse, Hocutt, and Townson

126.    Defendants Hillhouse, Hocutt, and Townson were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and Defendants Hillhouse, Hocutt, and Townson actually drew that inference.

127.    While Mr. Schulte was in the medical unit, Defendant Hillhouse met with Mr. Schulte.

128.    When Defendant Hillhouse walked into the medical unit, he was laughing and asked Mr. Schulte why his officer would do that to him.

129.    Defendant Hillhouse was referring to Defendant Letlow slamming the slot door onto Mr. Schulte's hands and wrists.

130.   Mr. Schulte then explained to Defendant Hillhouse how he was trying to get a shirt because he did not get one during the laundry exchange. As he was asking for a shirt, Defendant Letlow slammed his hands and wrist in the cell slot with the slot door.

131.   After Mr. Schulte explained to Defendant Hillhouse what happened, Defendant Letlow went to the medical unit to meet with Mr. Schulte.

132.   Defendant Hocutt was recording the conversation between Defendant Letlow and Mr. Schulte on a video camera while Defendant Hillhouse was present.

133.   During that conversation, Defendant Letlow apologized to Mr. Schulte and said that he thought Mr. Schulte was going to do what other inmates would have done.

134.   Mr. Schulte asked what Defendant Letlow meant by that statement.

135.   Defendant Letlow admitted that he thought Mr. Schulte was someone else.

136.   Defendant Letlow added that Mr. Schulte did nothing wrong.

137.   While in the medical unit, x-rays were taken of Mr. Schulte's hands and wrists.

138.   The x-rays showed that Mr. Schulte had two fractured bones.

139.   Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were present in the medical unit when the x-rays were discussed which showed Mr. Schulte had fractures in his hands and wrists.

140.   Thus, Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were aware that Mr. Schulte sustained fractures when Defendant Letlow slammed the slot door onto his hands and wrists.

141.   The jail medical staff told Mr. Schulte that he would have to deal with his hand when he was released from jail.

142.    Mr. Schulte requested to go to the emergency room, but his request was denied.

143.    Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were present in the medical unit when Mr. Schulte's request to go to the emergency room was denied.

144.    Thus, Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were aware that Mr. Schulte was not receiving medical care for his obvious serious injury.

145.    Defendant Hillhouse did not want Mr. Schulte to be taken to the hospital because Defendant Hillhouse was attempting to cover up the excessive force used by Defendant Letlow.

146.    Mr. Schulte filed multiple grievances regarding this incident and directed them to Defendant Hillhouse.

147.    These grievances directed to Defendant Hillhouse demonstrate further knowledge and ratification by Defendant Hillhouse of the denial of medical care to Mr. Schulte.

148.    Mr. Schulte repeatedly asked the Henderson County jail staff for medical care and was denied each time.

149.    On one occasion, Mr. Schulte asked Defendant Karen Townson to ice and re-wrap his hand.

150.    Defendant Townson told Mr. Schulte that his hand was not fractured in more than three spots and walked away without providing Mr. Schulte any medical attention.

151.    Defendant Townson visually saw the swelling of Mr. Schulte's hand and knew that he had a fracture but did nothing to help him.

152.    On another occasion, Mr. Schulte asked Defendant Hocutt for medical attention.

153.    Mr. Schulte told Defendant Hocutt how much pain he was in and Defendant Hocutt was aware that Mr. Schulte had fractures as a result of Defendant Letlow slamming his hands and wrists in the slot door, but Defendant Hocutt still refused to give him medical attention.

154.    Instead of providing Mr. Schulte with medical attention, Defendant Hocutt called Mr. Schulte a "pussy" in an apparent effort to degrade him while simultaneously acknowledging his pain.

155.    Defendant Townson was present when this occurred.

156.    Instead of providing Mr. Schulte with medical attention, Defendant Townson just laughed at what Defendant Hocutt called Mr. Schulte.

157.    While he was being released on March 21, 2019, Mr. Schulte saw Defendant Townson outside of the jail smoking a cigarette. Defendant Townson asked Mr. Schulte why he was not taken to the hospital when his hand was injured.

## **Defendant Ferguson**

158.    Defendant Ferguson was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and Defendant Ferguson actually drew that inference.

159.    In another instance, Mr. Schulte came into contact with Defendant Michael Ferguson.

160.    Mr. Schulte showed Defendant Ferguson his hand, explained it was fractured, and explained that he was in an extreme amount of pain.

161.    Mr. Schulte asked Defendant Ferguson for medical attention.

162.    Defendant Ferguson looked at Mr. Schulte's hand and then smiled and walked away without rendering medical attention.

## Causation

163.    As a direct result of Defendants Hillhouse, Hocutt, Ferguson, and Townson failing to provide medical care and attention to Mr. Schulte, Mr. Schulte suffered physical injury, pain, and mental anguish for which he sues herein.

164.    As a result of being denied medical care for his fractured wrist, Mr. Schulte suffered in agonizing pain and was forced to live with a fractured wrist for from March 18, 2019 through March 21, 2019 when he was finally released from custody and able to go to the hospital.

165.    These injuries were not caused by any other means.

166.    These Defendants were at all times acting under the color of law.

## Count Three

**POLICY OF COVERING UP EXCESSIVE FORCE AND FAILING TO PROVIDE MEDICAL CARE TO INMATES INJURED BY HENDERSON COUNTY STAFF**
***Monell v. New York City Department of Social Services***
**Violation of the Fourteenth Amendment**
**Pursuant to 42 U.S.C § 1983**
**Defendant Hillhouse (in his official capacity)**

167.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

168.    Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).

169.    A municipality may be sued under § 1983 if a constitutional violation is the result of a formal policy or governmental custom. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010).

170.    A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

171.    "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

172.    A decision to adopt a particular course of conduct represents official policy even if it is not intended to govern future conduct so long as the decision was made by a final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

173.    Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. *Id.*

174.    Municipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur*, 475 U.S. at 483, 106 S. Ct. at 1300.

## Policymaker

175.    The Sheriff is the chief law enforcement officer for Henderson County and is responsible for running the jail.

176.    The Sheriff has been delegated as the policymaker for the sheriff's office and the jail by the Henderson County Commissioner's Court.

177.    At all times relevant to this lawsuit, Defendant Hillhouse was the Sheriff of Henderson County and was the policymaker for the Henderson County sheriff's office and the Henderson County jail.

### Official Policies

178.    Through the acts of Henderson County's Policymaker, Defendant Hillhouse, Henderson County maintained a policy of denying Plaintiff, adequate medical care in violation of his rights under the Fourteenth Amendment.

179.    Through the acts of Henderson County's Policymaker, Defendant Hillhouse, Henderson County created official policy by ratifying the denial of adequate medical care to Plaintiff, in violation of his rights under the Fourteenth Amendment.

180.    Through the acts of Henderson County's Policymaker, Defendant Hillhouse, Henderson County created official policy by ratifying the excessive force used by Defendant Letlow against Plaintiff, in violation of his Fourteenth Amendment rights.

181.    Through the acts of Henderson County's Policymaker, Defendant Hillhouse, Henderson County maintained and ratified a policy of covering up excessive force against inmates by refusing to send them to the emergency room where the misconduct would be discovered, all in violation of Plaintiff's right to adequate medical care under the Fourteenth Amendment.

### Facts Supporting Official Policies

182.    Defendant Letlow slammed the metal cell slot door on Mr. Schulte's hands and wrists without any valid reason.

183.    While Mr. Schulte was in the medical unit, Defendant Hillhouse met with Mr. Schulte.

184.    When Defendant Hillhouse walked into the medical unit, he was laughing and asked Mr. Schulte why his officer would do that to him.

185.    Defendant Hillhouse was referring to Defendant Letlow slamming the slot door onto Mr. Schulte's hands and wrists.

186.    Mr. Schulte then explained to Defendant Hillhouse how he was trying to get a shirt because he did not get one during the laundry exchange. As he was asking for a shirt, Defendant Letlow slammed his hands and wrist in the cell slot with the slot door.

187.    After Mr. Schulte explained to Defendant Hillhouse what happened, Defendant Letlow went to the medical unit to meet with Mr. Schulte.

188.    Defendant Hocutt was recording the conversation between Defendant Letlow and Mr. Schulte on a video camera while Defendant Hillhouse was present.

189.    During that conversation, Defendant Letlow apologized to Mr. Schulte and said that he thought Mr. Schulte was going to do what other inmates would have done.

190.    Mr. Schulte asked what Defendant Letlow meant by that statement.

191.    Defendant Letlow admitted that he thought Mr. Schulte was someone else.

192.    Defendant Letlow added that Mr. Schulte did nothing wrong.

193.    While in the medical unit, x-rays were taken of Mr. Schulte's hands and wrists.

194.    The x-rays showed that Mr. Schulte had two fractured bones.

195.    Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were present in the medical unit when the x-rays were discussed which showed Mr. Schulte had fractures in his hands and wrists.

196.    Thus, Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were aware that Mr. Schulte sustained fractures when Defendant Letlow slammed the slot door onto his hands and wrists.

197.    The jail medical staff told Mr. Schulte that he would have to deal with his hand when he was released from jail.

198.    Mr. Schulte requested to go to the emergency room, but his request was denied.

199.    Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were present in the medical unit when Mr. Schulte's request to go to the emergency room was denied.

200.    Thus, Defendant Hillhouse, Defendant Hocutt, and Defendant Townsend were aware that Mr. Schulte was not receiving medical care for his obvious serious injury.

201.    Defendant Hillhouse, as Sheriff and policymaker for Henderson County, ratified and actively participated in the denial of medical care to Mr. Schulte, creating municipal policy.

202.    Defendant Hillhouse did not want Mr. Schulte to be taken to the hospital because Defendant Hillhouse was attempting to cover up the excessive force used by Defendant Letlow.

203.    Instead of providing him with actual medical care – which was obviously needed due to the fact that his x-rays showed he had a fracture and the cause of the fracture was known to be Defendant Letlow - Nurse Sheryl placed two popsicles sticks and an ace wrap around Mr. Schulte's wrist.

204.    This was clearly inadequate medical care for a fractured bone.

205.    Mr. Schulte was in extreme pain and requested medication to ease his pain.

206.    The jail staff only offered Mr. Schulte Tylenol.

207.    Nurse Susie, told Mr. Schulte that they only give Tylenol in the Henderson County jail.

208.    Mr. Schulte again asked if he could go to the emergency room; however, again, his request was denied.

209.    Mr. Schulte could have been taken to the hospital where he would have been given adequate care and adequate medication; however, he was denied both.

210.    Mr. Schulte filed multiple grievances regarding this incident and directed them to Defendant Hillhouse.

211.    On March 20, 2019, Mr. Schulte filed an inmate request stating, "why haven't y'all sent an officer to me to press charges...I've sent a grievance every day since" and "I'm pressing charges on my broken wrist that [sic] officer broke."

212.    Mr. Schulte received a response on March 21, 2019 that stated, "DA's office has been notified."

213.    These grievances directed to Defendant Hillhouse demonstrate further knowledge and ratification by Defendant Hillhouse of the denial of medical care to Mr. Schulte.

214.    As the policymaker for Henderson County, this action of ratifying and actively participating in the denial of medical care to Mr. Schulte created a municipal policy.

215.    Mr. Schulte repeatedly asked the Henderson County jail staff for medical care and was denied each time.

216.    Mr. Schulte's pain level was at a constant level nine on a scale of one to ten.

217.    While in his medical cell, Mr. Schulte continuously pressed the help call button, but no jail staff ever responded.

218.    On one occasion, Mr. Schulte asked Defendant Karen Tonwnson to ice and re-wrap his hand.

219.    Defendant Townson told Mr. Schulte that his hand was not fractured in more than three spots and walked away without providing Mr. Schulte any medical attention.

220.    Defendant Townson visually saw the swelling of Mr. Schulte's hand and knew that he had a fracture but did nothing to help him.

221.    In another instance, Mr. Schulte came into contact with Defendant Ferguson.

222.    Mr. Schulte showed Defendant Ferguson his hand, explained it was fractured, and explained that he was in an extreme amount of pain.

223.    Mr. Schulte asked Defendant Ferguson for medical attention.

224.    Defendant Ferguson looked at Mr. Schulte's hand and then smiled and walked away without rendering medical attention.

225.    On another occasion, Mr. Schulte asked Defendant Hocutt for medical attention.

226.    Mr. Schulte told Defendant Hocutt how much pain he was in and Defendant Hocutt was aware that Mr. Schulte had fractures as a result of Defendant Letlow slamming his hands and wrists in the slot door, but Defendant Hocutt still refused to give him medical attention.

227.    Instead of providing Mr. Schulte with medical attention, Defendant Hocutt called Mr. Schulte a "pussy" in an apparent effort to degrade him while simultaneously acknowledging his pain.

228.    Defendant Townson was present when this occurred.

229.    Instead of providing Mr. Schulte with medical attention, Defendant Townson just laughed at what Defendant Hocutt called Mr. Schulte.

230.    Mr. Schulte was released on a personal recognizance bond on March 21, 2019.

231.    Mr. Schulte had been in custody for ninety-six days.

232.    Mr. Schulte was released on a personal recognizance bond only three days after Defendant Letlow broke his wrist.

233.    During that three days, Mr. Schulte was in extreme agony as his wrist was fractured and he did not receive any medical attention.

234.    While he was being released on March 21, 2019, Mr. Schulte saw Defendant Townson outside of the jail smoking a cigarette. Defendant Townson asked Mr. Schulte why he was not taken to the hospital when his hand was injured.

235.    Mr. Schulte did not know what to say since when he asked to go to the Emergency Room his request was denied.

236.    This shows that Defendant Townson knew Mr. Schulte needed to go to hospital each time she denied him medical care in the jail.

237.    Defendants Hocutt and Townson knew that the Sheriff and policymaker, Defendant Hillhouse, was aware that Defendant Letlow fractured Mr. Schulte's wrist and then told Mr. Schulte that Mr. Schulte had done nothing wrong.

238.    Defendants Hocutt and Townson knew this because they were present when Defendant Letlow made this statement to Mr. Schulte in front of Defendant Hillhouse.

239.    Defendants Hocutt and Townson also knew that Defendant Letlow was not punished by Defendant Hillhouse for using excessive force and that Defendant Hillhouse was aware that Mr. Schulte was not being taken to the hospital for his fractured wrist.

240.    Defendants Hocutt and Townson knew this because they were present when Mr. Schulte's request to go to the emergency room was denied in front of Defendant Hillhouse and because Defendant Letlow was not punished.

241.    As a result of knowing that the Sheriff and policymaker, Defendant Hillhouse, was ratifying Defendant Letlow's excessive force as well as ratifying the denial of medical care for Mr. Schulte, they felt empowered to deny medical care to Mr. Schulte as this was clearly the policy being promulgated by the Sheriff and policymaker, Defendant Hillhouse.

242.    Upon information and belief, as a result of knowing that the Sheriff and policymaker, Defendant Hillhouse, was ratifying Defendant Letlow's excessive force as well as ratifying the denial of medical care for Mr. Schulte, Defendant Ferguson felt empowered to deny medical care to Mr. Schulte as this was clearly the policy being promulgated by the Sheriff and policymaker, Defendant Hillhouse.

**Violation of Constitutional Rights Whose 'Moving Force' is the Policy**

243.    As a direct result of these unconstitutional policies promulgated by Henderson County policymaker, Defendant Hillhouse, Defendants Hillhouse, Hocutt, Ferguson, and Townson failed to provide medical care and attention to Mr. Schulte, which caused Mr. Schulte to suffer physical injury, pain, and mental anguish.

244.   Mr. Schulte suffered a nondisplaced fracture of the midshaft body of the navicular bone in the wrist when Defendant Letlow used excessive force against him by slamming his hands and wrists with the slot hole door.

245.   Due to the policy of denying Mr. Schulte medical care in an effort to cover up excessive force by a Henderson County jailer, which was promulgated and ratified by Henderson County policymaker, Defendant Hillhouse, Defendants Hillhouse, Hocutt, Ferguson, and Townson failed to provide Mr. Schulte with medical care – despite knowing that Mr. Schulte sustained the fracture and knowing that Mr. Schulte was in extreme pain.

246.   As a result of being denied medical care, Mr. Schulte suffered in agonizing pain and was forced to live with a fractured wrist for from March 18, 2019 through March 21, 2019 when he was finally released from custody and able to go to the hospital.

## V.
## PUNITIVE DAMAGES

247.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

248.   When viewed objectively from the standpoint of the Individual Defendants, at the time of the occurrence, the Individual Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

249.   As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by the Individual Defendants, Plaintiff is entitled to recover exemplary damages against the Individual Defendants in an amount within the jurisdictional limits of this Court.

# VI.
# DAMAGES

250.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

251.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Letlow's use of excessive force, Defendants Hillhouse, Hocutt, Townson, and Ferguson's deliberate indifference to Plaintiff's health and safety, and Defendant Hillhouse's deliberately indifferent and unconstitutional policies, practices, and customs.

252.    As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends the Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages against the Individual Defendants.

253.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

> a.    Physical injuries;
>
> b.    Physical pain and suffering;
>
> c.    Emotional distress, torment, and mental anguish ;and
>
> d.    Lost wages.

254.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees, expert fees, and costs of court.

**VII.**
**ATTORNEY'S FEES**

255.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

**VIII.**
**JURY REQUEST**

256.    Plaintiff respectfully requests a jury trial.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF